IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| IN RE: | ) | Case No. 15-13962-RGM |
| | ) | |
| RODNEY PAUL HUNT, | ) | |
| | ) | Chapter 7 |
| Debtor. | ) | |
| | ) | |
| RODNEY P. HUNT, | ) | Adversary Proc. No. <u>16-01199</u> |
| | ) | |
| Plaintiff, | ) | Motion to Remand |
| | ) | |
| v. | ) | |
| | ) | |
| 201 CHAIN BRIDGE LLC | ) | |
| | ) | |
| Defendant. | ) | |

**201 CHAIN BRIDGE LLC'S MOTION TO
REMAND UNLAWFUL DETAINER AND MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Movant, 201 Chain Bridge LLC ("201 Chain Bridge" or "Movant"), by and through

counsel, hereby moves this Court for an order remanding the pending summons for

unlawful detainer back to the Arlington County General District Court ("General District

Court") and for such further and other relief as the Court deems necessary, and, in

support of its Motion, 201 Chain Bridge LLC states the following:

Leon Koutsouftikis  #44262
MAGRUDER COOK & KOUTSOUFTIKIS
1889 Preston White Drive, Suite 200
Reston, VA  20191
(703) 766-4400/fax: (703) 766-4408
Counsel for 201 Chain Bridge LLC

## I.  PROCEDURAL HISTORY/STATEMENT OF FACTS

1.      On November 10, 2015, Rodney P. Hunt ("Debtor" or "Hunt") filed a

bankruptcy petition under Chapter 11 of the United States Bankruptcy Code, Case No.

15-13962-RGM (the "Petition").

2.      At the inception of the bankruptcy, The Rodney P. Hunt Revocable Trust

by and through Rodney P. Hunt, Trustee owned the residential real property and

improvements located at 201 Chain Bridge Road, McLean, Virginia (the "Property"),

subject to an Adjustable Note dated April 5, 2007 ("Note") held by Bank of America,

N.A. (the "Bank").  Mr. Rodney P. Hunt ("Hunt" or "Debtor") was a guarantor of the Note

and resided at the Property.

3.      Payment of the Note was secured, *inter alia*, by a lien on the Property as

evidenced by a Deed of Trust dated April 5, 2007, and recorded among the Land

Records of Arlington County, Virginia, on April 6, 2007, as Instrument No. 2007096037

(the "Deed of Trust").

4.      As a result of a default under the Note and Deed of Trust, on March 29,

2016, the Bank obtained an Order Terminating the Automatic Stay ("Bank Lift Stay

Order") [docket no. 53] to permit the Bank to foreclose on the Property due to a default

under the Note and Deed of Trust.

5.      The Bank Lift Stay Order provided, in pertinent part, "that Bank of

America, and its successors and assigns, shall immediately, and without further notice

or order of this Court, be entitled to exercise and enforce their rights and remedies"

under the Deed of Trust, and to evict Hunt and his personal effects from the Property.

6.    As evidenced by a Deed of Removal of Trustee and Appointment of Substitute Trustee dated April 6, 2016 ("Deed of Removal") and filed with the Circuit Court of Arlington County on April 14, 2016, a substitute trustee was appointed by the Bank.

7.    On April 18, 2016, this case was converted to Chapter 7.

8.    On May 20, 2016, the Chapter 7 Trustee obtained an Order Approving the Sale of Personal Property of the Debtor (the "Sale Order") [docket no. 87]. Pursuant to Sale Order, the Chapter 7 Trustee was authorized to sell Debtor's non-exempt personal property located in and around the Property. Pursuant to the Sale Order, any personal property not sold or removed from the Property would be deemed abandoned. The Chapter 7 Trustee has sold some of Debtor's non-exempt personal property in accordance with the Sale Order.

9.    The Bank, by and through the substitute trustee appointed pursuant to the Deed of Removal, foreclosed on the Property and sold the Property to the movant, 201 Chain Bridge LLC. The transfer or sale of the Property to 201 Chain Bridge LLC is evidenced by a Substitute Trustee's Deed dated July 8, 2016, and recorded among the Land Records of Arlington County, Virginia on July 14, 2016, as instrument No. 20160100014526 (the "Deed"). A true and accurate copy of the Deed is attached hereto as **Exhibit 1** and incorporated by reference herein.

10.    201 Chain Bridge LLC is the current owner of the Property.

3

11.     Following 201 Chain Bridge's acquisition of the Property and the Bank Lift Stay Order authorizing the Bank's successor and assigns to evict Hunt from the Property, 201 Chain Bridge sought Mr. Hunt's eviction from the Property by filing a Summons for Unlawful Detainer in the Arlington County General District Court ("General District Court"), case no. GV16-3602 (the "Unlawful Detainer") on August 4, 2016. The Unlawful Detainer was scheduled for a first return on August 29, 2016.

12.     Prior to the first return, 201 Chain Bridge reconsidered the Bank Lift Stay Order and determined that the Bank Lift Stay Order was ambiguous as to whether the phrase "successor and assigns" referred to the successors and assigns of Bank of America, or Bank of America's successors and assigns to the Property.  Out of an abundance of caution, 201 Chain Bridge decided that it should seek a comfort order lifting the automatic stay.

13.     On August 24, 2016, a Notice of Removal to United States Bankruptcy Court (the "First Notice") was filed with this Court, resulting in the creation of an adversary proceeding, case no. 16-01178-RGM (the "First Proceeding").

14.     On August 29, 2016, the Unlawful Detainer was continued to October 24, 2016.  On August 29, 2016, Mr. Daniel Press appeared on behalf of Mr. Hunt in General District Court.

15.     This Court subsequently scheduled a Status Conference on September 13, 2016 on the First Proceeding.

4

16.    On September 2, 2016, 201 Chain Bridge filed a motion for relief from the automatic stay ("201 Lift Stay Motion") and scheduled the same for hearing on September 21, 2016.

17.    On September 13, 2016, at the hearing on the Court's Status Conference on the First Proceeding, Mr. Daniel Press, counsel for Mr. Hunt, appeared before this Court and advised that after speaking with Mr. Hunt, Mr. Hunt disavowed having any knowledge of the First Notice, Mr. Hunt's signature did not appear on the First Notice, and that Mr. Hunt did not otherwise authorize the filing of the First Notice.

18.    After those representations were made to the Court, 201 Chain Bridge moved to strike the First Notice as an unauthorized filing.  The Court granted 201 Chain Bridge's request, and on September 15, 2016, this Court entered an Order Striking Notice of Removal and Remanding Case which effectively remanded the Unlawful Detainer back to the General District Court.

19.    On September 21, 2016, the Honorable Brian F. Kenney granted 201 Chain Bridge's request for a comfort order and an Order Terminating Automatic Stay was entered giving 201 Chain Bridge the right to move forward with the Unlawful Detainer.

20.    On October 24, 2016, at the continued first return on the Unlawful Detainer in the General District Court, Mr. Hunt appeared and proffered to the General District Court a Notice of Removal to United States Bankruptcy Court dated October 24, 2016 (the "Second Notice").

5

21.    The Second Notice was filed by Mr. Hunt in the United States District

Court for the Eastern District of Virginia (Alexandria) ("District Court"), case no.

1:16cv1335 (JCC/MSN).  By Order dated October 27, 2016, the District Court

transferred the case to this Court.

22.    The Second Notice is almost identical to the First Notice which Mr. Hunt,

by and through counsel, disavowed in open Court on September 13, 2016, which First

Notice was promptly stricken from the record.

23.    As a result of Mr. Hunt's dilatory tactics, 201 Chain Bridge cannot move

forward with the Unlawful Detainer until this Court remands the same to the General

District Court.

## II.  LEGAL ARGUMENT

1.    <u>Mr. Hunt's Second Notice is Untimely Pursuant to Bankruptcy Rule 9027(a)</u>

Bankruptcy Rule 9027(a)(3) provides as follows:

Time for Filing; Civil Action Initiated After Commencement of the Case Under
Code.  If a claim or cause of action is asserted in another court after the
commencement of a case under the Code, a notice of removal **may be filed
with the clerk only within the shorter** of (A) 30 days after receipt, through
service or otherwise, of a copy of the initial pleading setting forth the claim or
cause of action sought to be removed, or (B) 30 days after receipt of the
summons if the initial pleading has been filed with the court but not served with
the summons.

(Emphasis added).  In this instance, the Unlawful Detainer was clearly filed (August 4,

2016) after the commencement of the case under the Code (commenced on November

10, 2015).  Mr. Hunt was served with the Unlawful Detainer on August 22, 2016.  A true

and accurate copy of the return of service is attached hereto as **Exhibit 2** and

incorporated by reference herein.  The Second Notice was filed on October 24, 2016.

Bankruptcy Rule 9027(a)(3) required a notice of removal to be filed on or before

September 21, 2016.  Alternatively, Mr. Press's appearance in the General District

Court on August 29, 2016 constituted Mr. Hunt's acquiescence to the jurisdiction of the

General District Court, *i.e.,* service of process, in which case, Mr. Hunt was required to

file the Second Notice on or before September 28, 2016.

Since the filing of the Second Notice was grossly untimely under any rubric, the

Unlawful Detainer should be remanded back to the General District Court.[1]

2.     Alternatively, This Court Should Exercise Permissive Abstention and
       Remand this Matter on Equitable Grounds.

"A bankruptcy must abstain if the proceeding is based upon a state law claim or

cause of action; the only basis for federal jurisdiction is "related to jurisdiction under 28

U.S.C. § 1334; and an action has been commenced, and can be timely adjudicated in a

state forum of appropriate jurisdiction." *Bank of Am., N.A. v. Brennan Title Co. (In re:*

*Donoho),* 402 B.R. 687, 699 (Bankr. E.D. Va. 2009).  In this instance, there is the

potential basis for federal jurisdiction based upon diversity of the parties to the Unlawful

Detainer, thus there is no mandatory abstention pursuant to 28 U.S.C. § 1334(c)(2).

However, a bankruptcy court may abstain from any proceeding in the interest of justice,

or in the interest of comity with State courts or respect for State law.  *In re: Donoho,* 402

B.R. at 698 (Bankr. E.D. Va. 2009).

---

[1] Even had the District Court retained the Unlawful Detainer following its removal from the
General District Court, the Second Notice would still be untimely.  28 U.S.C § 1446(b)(1)
requires that a notice of removal be filed within thirty (30) days after receipt of a summons or
service.

Under 28 U.S.C. § 1334(c)(1), bankruptcy courts have discretion to permissively

abstain from hearing a particular hearing or proceeding. *Kepley Broscious, PLC v.*

*Ahearn (In re Ahearn)*, 318 B.R. 638, 644 (Bankr. E.D. Va. 2003). "Unlike the analysis

of the necessity for mandatory abstention, where all criteria must be satisfied to abstain

from adjudication of a matter, these factors are weighed in light of the circumstances of

each case." *Smith v. McLeskey (In re Bay Vista of Va., Inc.)*, 394 B.R. 820, 845 (Bankr.

E.D. Va. 2008). "Courts have considered several factors when determining whether to

exercise permissive abstention:

> (1) the court's duty to resolve matters properly before it; (2) the predominance of
> state law issues and non-debtor parties; (3) the economical use of judicial
> resources; (4) the effect of remand on the administration of the bankruptcy
> estate; (5) the relatedness or remoteness of the action to the bankruptcy case;
> (6) whether the case involves the questions of state law better addressed by the
> state court; (7) comity considerations; (8) any prejudice to the involuntarily
> removed parties; (9) forum non conveniens; (10) the possibility of inconsistent
> results; (11) any expertise of the court where the action originated; and (12) the
> existence of a right to jury trial.

*In re: Ahearn*, 318 B.R. at 644.

In this case, equity favors remand. The only matter pending in this second

adversary proceeding is the Unlawful Detainer. To date, while Mr. Hunt claims that a

complaint is forthcoming, Hunt has not actually filed a complaint in this proceeding.

Nevertheless, from the allegations set forth in the Second Notice and the information

provided in the Civil Cover Sheet filed with the District Court, 201 Chain Bridge posits

that this Court would abstain from hearing any case filed by Mr. Hunt related to the

Property.

In the Civil Cover Sheet filed with the District Court in relation to the Second

Notice, Mr. Hunt asserts that the basis for removal is a federal question – namely fraud

upon this Court.  In the Second Notice, Mr. Hunt concludes that this matter "concerns

the questionable conduct [of] Plaintiff's attorney [Mr. Daniel Press] and [the] bankruptcy

trustee." Thus while Mr. Hunt's concerns or allegations relate to his underlying

bankruptcy, Mr. Hunt himself acknowledges that 201 Chain Bridge is not a party to any

case that he intends to file.

Indeed, in reading the Second Notice, it appears that Hunt's intention is to

forestall entry of a judgment for possession in the Unlawful Detainer while he intends to

attempt to "reset" his bankruptcy by seeking to revoke the Bank's Lift Stay Motion,

unwind the foreclosure of the Property, unwind 201 Chain Bridge's acquisition of the

Property, and revoke the comfort lift stay order obtained by 201 Chain Bridge.  What

Mr. Hunt appears to be trying to do is to create a defense to 201 Chain Bridge's

Unlawful Detainer by claiming that alleged wrongs committed by third parties gives title

to the Property back to Hunt.  Hunt's desire for a do-over does not and should not be a

cognizable reason for this Court to retain the Unlawful Detainer.

This Court has already granted the Bank the right to foreclose on the Property

and to do so in accordance with applicable State law.  This Court subsequently granted

201 Chain Bridge LLC the right to evict Mr. Hunt and his possessions from the Property

in accordance with State law.  By virtue of two (2) lift stay orders issued regarding the

Property, this Court has already tacitly determined that issues relating to the Property

9

are best adjudicated in State Court.

As in *In re: Donoho*, this Court should permit litigation to go forward in the

General District Court because only issues of State law are involved, judicial economy

will be promoted, and the litigation will not interfere with the bankruptcy estate as 201

Chain Bridge already has the Court's approval to move forward with the Unlawful

Detainer which was brought up before Judge Kenney on September 21, 2016. *Id.* at

699 (citing *In re: Robbins*, 964 F.2d 342 (4th Cir. 1992). The Unlawful Detainer

concerns issues of real estate/real property which is "an area of the law in which state

rather than federal interests predominate, [thus] it is appropriate the issues raised in the

[Unlawful Detainer] be resolved by the state courts." *Id.* at 699.

Finally, Mr. Hunt's dilatory strategy should not be overlooked by this Court. A

couple of days prior to the first return on the Unlawful Detainer on August 29, 2016, The

First Notice was filed. No action whatsoever was taken to prosecute that matter. The

Court *sua sponte* scheduled a Status Conference at which time it was represented by

Mr. Press that Mr. Hunt neither signed the First Notice nor authorized its filing. The

First Notice was stricken from the record and the Unlawful Detainer remanded to the

General District Court on September 15, 2016.

In Paragraph 6 of the Second Notice, Mr. Hunt now alleges that Mr. Press's

representations to this Court on September 15, 2016 were erroneous and that Mr. Hunt

did in fact sign/authorize the First Notice. But rather than take immediate action to

correct the alleged erroneous representations, Mr. Hunt waited for over a month – until

10

October 24, 2016 – to delay the Unlawful Detainer proceeding once again by filing the

Second Notice. As noted, no complaint has been filed and there is no reason to

suspect that Mr. Hunt has an intention to actually articulate any perceived cause of

action against 201 Chain Bridge Road. Contrary to Mr. Hunt's assertion in Paragraph 8

of the Second Notice, 201 Chain Bridge is unduly prejudiced as a result of the

continued delay in an adjudication by the General District Court on the Unlawful

Detainer. Mr. Hunt has been in possession of the Property without any right or

compensation whatsoever to 201 Chain Bridge since it acquired the Property in July

2016.

     As a result of Mr. Hunt's dilatory tactics, in addition to having this matter

immediately remanded to the General District Court, 201 Chain Bridge also respectfully

requests that this Court issue an order require Mr. Hunt to obtain the prior written

approval of this Court prior to attempting to engage in any further efforts to remove the

Unlawful Detainer.

### III. CONCLUSION

     201 Chain Bridge LLC respectfully requests that this Court order the following:

(1) that the Unlawful Detainer be immediately remanded to the Arlington County

General District Court; (2) that Mr. Hunt be required to obtain the prior written approval

of this Court prior to attempting to engage in any further efforts to remove the Unlawful

Detainer; and/or (3) such other and further relief as the Court deems necessary.

11

Dated: <u>October 31, 2016</u>           Respectfully submitted,

                                    MAGRUDER COOK & KOUTSOUFTIKIS

By:    <u>/s/ Leon Koutsouftikis</u>
          Leon Koutsouftikis, Esq.
          1889 Preston White Drive, Suite 200
          Reston, VA  20191
          (703) 766-4400/Fax: (571) 313-8967
          Counsel for 201 Chain Bridge LLC

C6401.018